UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


EDWARD GOLDMAN,

                    Plaintiff,                                        Hon. Janet T. Neff

v.                                                                          Case No. 1:08-CV-664

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.
_____/


## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.

§ 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim

for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  Section 405(g)

limits the Court to a review of the administrative record, and provides that if the Commissioner's

decision is supported by substantial evidence, it shall be conclusive.  Pursuant to 28 U.S.C. §

636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and

recommendations for disposition of social security appeals, the undersigned recommends that the

Commissioner's decision be **affirmed**.


## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and

of the record made in the administrative hearing process.  *See Willbanks v. Sec'y of Health and*

*Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).  The scope of judicial review in a social security

case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff was 46 years of age at the time his insured status expired. (Tr. 16, 59). He successfully completed high school and worked previously as a food service supervisor. (Tr. 70-71, 535).

Plaintiff applied for benefits on December 17, 2004, alleging that he had been disabled since April 2, 1997, due to back pain, headaches, and high blood pressure. (Tr. 66-69, 87). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 45-58, 292-98). On September 13, 2007, Plaintiff appeared before ALJ Thomas Walters, with testimony being offered by Plaintiff, Plaintiff's pastor, and vocational expert, Sandra Steele. (Tr. 530-55). In a written decision dated September 28, 2007, the ALJ determined that Plaintiff was not disabled as defined by the Social Security Act. (Tr. 15-24). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 4-6). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on December 31, 2003. (Tr. 16). To be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## RELEVANT MEDICAL HISTORY

On April 27, 2001, Plaintiff was examined by Dr. James LaBerge. (Tr. 229). Plaintiff reported that he was "doing well" and that his pain "has decreased" with medication. (Tr. 229). On May 30, 2001, Plaintiff reported to Dr. LaBerge that his pain, on average, rated as 3/10. (Tr. 226). On July 30, 2001, Plaintiff reported to Dr. LaBerge that his pain was "controlled" with medication. (Tr. 224).

On August 9, 2001, Dr. LaBerge reported that Plaintiff was "incapable of minimal (sedentary) activity" and "can't work." (Tr. 222-23).

On August 31, 2001, Plaintiff reported to Dr. LaBerge that his pain, on average, rated 3/10. (Tr. 220). On December 13, 2001, Plaintiff reported to Dr. LaBerge that his pain ranged in intensity from 2/10 to 5/10. (Tr. 215). On January 10, 2002, Plaintiff reported that he experiences back pain if he "sits too long." (Tr. 212).

On February 20, 2002, Plaintiff was examined by Dr. Kenneth Rudman. (Tr. 37-78). Plaintiff reported that he was experiencing "lower back and coccyx pain." (Tr. 377). Plaintiff reported that his pain is increased with walking, bending, sitting, standing, or lying flat. (Tr. 377). He reported that his pain is improved with rest, heat, and medication. (Tr. 377). Plaintiff walked with a shuffling gait and indicated that he could not stand fully upright. (Tr. 378). Plaintiff reported that he experienced pain with movement of his lumbar spine. (Tr. 378). Plaintiff was able to heel/toe walk and straight leg raising was negative. (Tr. 378). Plaintiff "exhibited tenderness in the lumbar area centrally and minimally along the facet joints." (Tr. 378). Palpation of Plaintiff's coccyx produced "increased pain," but "there was no increase of pain at the sacrum, sacroiliac joints or increased tenderness in the piriformis." (Tr. 378). Plaintiff exhibited "minimal spasm" in the

gluteal and paraspinal regions and his "lower extremity motor strength and sensation [were] within normal limits." (Tr. 378). Dr. Rudman diagnosed Plaintiff with low back pain and coccydynia.[1] (Tr. 378).

On February 24, 2002, Plaintiff participated in an MRI examination of his lumbar spine, the results of which revealed degenerative changes at L5-S1 with no evidence of herniation or stenosis. (Tr. 274).

On February 25, 2003, Plaintiff participated in an MRI examination of his brain, the results of which revealed "no evidence of an intracranial abnormality." (Tr. 271).

On April 10, 2003, Dr. LaBerge reported that Plaintiff was "TOTALLY disabled from ANY occupation" due to "incapacitating low back pain," high blood pressure, and depression. (Tr. 182-83).

On May 9, 2003, Plaintiff reported to Dr. LaBerge that his pain, at worst, rated 5/10 and, at best, rated 2/10. (Tr. 181). On June 6, 2003, Plaintiff reported that he was "doing about the same." (Tr. 178).

On June 10, 2003, Plaintiff participated in an MRI examination of his lumbar spine, the results of which revealed a "small" central disc herniation at L5-S1, but no evidence of stenosis or significant neural foramina compromise. (Tr. 268-70). There was also evidence of "mild" hypertrophic changes at L4-L5 and L5-S1. (Tr. 268-70).

---

[1] Coccydynia refers to "tailbone pain" that makes it painful to sit. *See* Coccyx Pain, available at http://www.coccyx.org/ (last visited on July 29, 2009). There are "effective treatments" for this condition and "the great majority of sufferers can be cured." *Id.*

On January 12, 2004, Plaintiff reported to Dr. LaBerge that his pain rates as 4/10 when he takes his medication. (Tr. 171). On March 9, 2004, Dr. LaBerge reported that Plaintiff's blood pressure was "stable." (Tr. 165).

On August 10, 2005, Plaintiff participated in an MRI examination of his lumbar spine, the results of which revealed degenerative changes, "most severe at the L5-S1 and L4-5 levels at which disc protrusions and facet hypertrophy combine to cause severe left neural foraminal narrowing and mass effect on the left L4 and L5 exiting nerve roots." (Tr. 528-29). There was also evidence that "the left S1 nerve root is abutted and slightly displaced by the L5-S1 disc." (Tr. 528-29).

On October 19, 2005, Dr. LaBerge completed a report concerning Plaintiff's limitations. (Tr. 446-47). The doctor reported that during an 8-hour workday, Plaintiff could sit and stand/walk for less than one hour each. (Tr. 446). The doctor reported that Plaintiff could never lift, carry, push, or pull any amount of weight. (Tr. 446). Dr. LaBerge reported that Plaintiff could never perform simple grasping or fine manipulation activities. (Tr. 446). The doctor reported that Plaintiff could never climb, balance, stoop, kneel, crouch, crawl, or reach above shoulder level. (Tr. 447). The doctor reported that Plaintiff experienced attention and concentration difficulties that precluded the performance of even simple, unskilled tasks. (Tr. 447). Dr. LaBerge asserted that Plaintiff suffered from these limitations "on or before" December 31, 2003. (Tr. 447). The doctor also acknowledged that he was aware that Plaintiff "was insured for social security coverage" only through December 31, 2003. (Tr. 447).

On March 4, 2006, Plaintiff participated in an MRI examination of his lumbosacral spine, the results of which revealed degenerative changes at L4-L5 and L5-S1. (Tr. 523-24). The

changes at L4-L5 appeared to have "progressed. . .since the prior study," resulting in "narrowing of the left neural foramina at L4-L5." (Tr. 523-24).

On March 20, 2006, Plaintiff was examined by Dr. Charles Bill. (Tr. 483-85). Plaintiff reported that he was experiencing lower back pain. (Tr. 483). Plaintiff exhibited normal range of spinal motion. (Tr. 484). Straight leg raising was negative and Patrick's test[2] was negative. (Tr. 484). The doctor examined an MRI of Plaintiff's spine and concluded that there was not "severe evidence of nerve root impingement." (Tr. 485).

On March 28, 2006, Plaintiff participated in an MRI examination of his brain, the results of which were "normal." (Tr. 522).

On April 25, 2006, Plaintiff was examined by Dr. Narendra Patel. (Tr. 479-80). Plaintiff reported that he was experiencing back pain and weakness in his extremities. (Tr. 479). The doctor observed that Plaintiff "is not in distress while sitting but when asked to stand up and lie down, he walked in a very bizarre slow motion with antalgic gait." (Tr. 480). Straight leg raising was negative and an examination of Plaintiff's spine revealed no evidence of tenderness or abnormality. (Tr. 480).

Plaintiff participated in a motor nerve examination of his upper extremities, the results of which revealed a "slight delay" at the left wrist, but were otherwise "normal." (Tr. 477, 480). Plaintiff participated in a sensory nerve examination of his upper extremities, the results of which were "normal." (Tr. 477, 480). Plaintiff also participated in an EMG examination of his left

---

[2] Patrick's test is used to determine whether a patient suffers from arthritis of the hip joint. This test is also referred to as Fabere's sign. J.E. Schmidt, *Schmidt's Attorneys' Dictionary of Medicine* P-81 (Matthew Bender) (1996).

upper and lower extremities, the results of which revealed no evidence of myotonia or denervation. (Tr. 478, 480).

Dr. Patel concluded that Plaintiff did not suffer from peripheral neuropathy, myopathy, or lumbar radiculopathy in his left lower extremity or cervical radiculopathy in his left upper extremity. (Tr. 480). The doctor concluded that Plaintiff's pain was musculoskeletal in origin, resulting from deconditioning and "minor" arthritic changes to his lumbar spine. (Tr. 479-80).

On February 14, 2007, Plaintiff participated in a whole body bone scan, the results of which revealed "mild areas of uptake, consistent with early degenerative change involving the chest wall/sternoclavicular joint and probable osteophyte left second rib, very faint." (Tr. 444-45). The examination was otherwise unremarkable. (Tr. 444-45).

On April 8, 2007, Plaintiff participated in a CT scan of his chest, the results of which revealed no evidence of pulmonary embolism, congestive heart failure, or pulmonary disease. (Tr. 430).

On April 10, 2007, Plaintiff participated in a cardiovascular stress test, the results of which were unremarkable. (Tr. 442). Plaintiff also participated in a myocardial perfusion scintigraphy examination, the results of which revealed a "small infarction" in the interior wall, but no evidence of ischemia. (Tr. 440).

On April 11, 2007, Plaintiff participated in a cardiac catheterization procedure, the results of which revealed an "essentially normal coronary artery study," with no evidence of significant mitral regurgitation, aortic stenosis, or renal artery abnormality. (Tr. 402-03).

# ANALYSIS OF THE ALJ'S DECISION

## A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

## B. The ALJ's Decision

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

---

[3] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

The Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

At step two, the ALJ determined that as of the date Plaintiff's insured status expired, he suffered from the following severe impairments: (1) degenerative disc disease; (2) hypertension; and (3) headaches. (Tr. 17). At step three, the ALJ determined that through the date Plaintiff was last insured, these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 17-20).

With respect to Plaintiff's residual functional capacity, the ALJ determined that through the date he was last insured, Plaintiff retained the ability to perform sedentary[4] work activities, subject to the following limitations: (1) Plaintiff requires a sit/stand option; (2) he cannot climb, crawl, squat, or kneel; (3) he can occasionally bend, twist, and turn; and (4) he can perform only unskilled work. (Tr. 20). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

At step five, the ALJ determined that Plaintiff was unable to perform his past relevant work. (Tr. 23). The burden of proof shifted to the Commissioner to establish by substantial

---

[4] Sedentary work involves lifting "no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567. Furthermore, while sedentary work "is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.*

evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Sandra Steele.

The vocational expert testified that there existed approximately 12,500 jobs in the lower peninsula of the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 551-53). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988). Accordingly, the ALJ determined that Plaintiff did not qualify for disability benefits.

a.      The ALJ Properly Evaluated the Medical Evidence

Plaintiff has treated with Dr. LaBerge for several years. During this time, the doctor has offered his opinions concerning Plaintiff's ability to perform work activities. On August 9, 2001, Dr. LaBerge reported that Plaintiff was "incapable of minimal (sedentary) activity" and "can't work." (Tr. 222-23). On April 10, 2003, Dr. LaBerge reported that Plaintiff was "TOTALLY

disabled from ANY occupation" due to "incapacitating low back pain," high blood pressure, and depression. (Tr. 182-83). Also, on October 19, 2005, Dr. LaBerge reported that as of the date Plaintiff's insured status expired, Plaintiff could sit and stand/walk for less than one hour each and could never lift, carry, push, or pull any amount of weight. (Tr. 446). The doctor further reported that Plaintiff was unable to perform even simple, unskilled tasks. (Tr. 447). Plaintiff asserts that because Dr. LaBerge was his treating physician, the ALJ was required to accord controlling weight to his opinions.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Accordingly, the medical opinions and diagnoses of treating physicians are given substantial deference, and if such opinions and diagnoses are uncontradicted, complete deference is appropriate. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

Nonetheless, the ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

As the Sixth Circuit has clearly held, when an ALJ chooses to accord less than controlling weight to the opinion of a treating physician, he must adequately articulate his rationale

for doing so.  *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544-47 (6th Cir. 2004).

As the *Wilson* court held:

> If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors - namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source - in determining what weight to give the opinion.
>
> Importantly for this case, the regulation also contains a clear procedural requirement: "We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion."  A Social Security Ruling explains that, pursuant to this provision, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."

*Id.* at 544 (internal citations omitted).

As the *Wilson* court further held, failure to comply with this requirement is not subject to harmless error analysis.  *Id.* at 546-47.  As the court expressly stated:

> A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely. . .To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with § 1527(d)(2), would afford the Commissioner the ability [to] violate the regulation with impunity and render the protections promised therein illusory.

*Id.* at 546 (internal citations omitted).

The ALJ found Dr. LaBerge's various opinions unpersuasive because they were inconsistent with the objective medical evidence as well as Dr. LaBerge's own treatment notes.  (Tr.

21-23). This conclusion is supported by substantial evidence. As detailed above, the results of objective medical testing, performed prior to and even well after the expiration of Plaintiff's insured status, consistently failed to reveal evidence of abnormality or impairment consistent with Dr. LaBerge's reports of extreme limitation. As the ALJ correctly observed, Dr. LaBerge's treatment notes, likewise fail to support the doctor's conclusion that Plaintiff suffered from such extreme limitations prior to the expiration of his insured status. In this respect, the ALJ correctly observed that Dr. LaBerge's treatment notes "quite heavily" reflect Plaintiff's subjective allegations which the doctor "seemed to uncritically accept as true." (Tr. 22). The Court further notes that the results of examinations performed by other medical professionals, both before and after the expiration of Plaintiff's insured status, also contradict the extreme limitations articulated by Dr. LaBerge.

The Court recognizes that the results of MRI examinations performed on August 10, 2005, and March 4, 2006, suggest an objective worsening of Plaintiff's back impairment. (Tr. 523-24, 528-29). Such is supported by Dr. LaBerge's treatment notes. (Tr. 490, 492-93, 450, 456). However, these examinations were performed 19 months and 26 months, respectively, after the expiration of Plaintiff's insured status. The record contains no evidence suggesting that, to the extent that Plaintiff's condition worsened after the expiration of his insured status such deterioration imposed upon Plaintiff, prior to December 31, 2003, limitations inconsistent with the ALJ's RFC determination. The Court finds, therefore, that the ALJ decision to afford less than controlling weight to Dr. LaBerge's opinion is supported by substantial evidence.

b.      The ALJ Properly Evaluated Plaintiff's Credibility

The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible." (Tr. 21). Plaintiff asserts that the ALJ failed to give proper weight to his subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531. This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to

15

resolve the significant conflicts in the administrative record." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations not to be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

As the ALJ correctly concluded, to the extent that Plaintiff alleges that, prior to the expiration of his insured status, he was limited to an extent beyond that recognized by the ALJ's RFC determination, such is contradicted by evidence of record. As discussed above, the medical evidence does not support Plaintiff's subjective allegations that he was limited to an extent beyond that recognized by the ALJ. The Court finds, therefore, that there exists substantial evidence to support the ALJ's credibility determination.

c.      Res Judicata

Plaintiff filed a previous application for disability benefits which was denied on April 26, 2000, following a hearing before an ALJ. (Tr. 15, 33-41). Plaintiff unsuccessfully appealed the matter to the Appeals Council, but there is no indication that Plaintiff pursued the matter further.

(Tr. 15).  Accordingly, the April 26, 2000 decision by the ALJ became the Commissioner's final

decision with respect to that particular claim for benefits.  *See* 20 C.F.R. § 404.987(a).  In the present

matter, ALJ Walters, with respect to this previous denial of benefits, concluded that:

> Pursuant to Social Security Acquiescence Rulings (AR 98-4(6) and
> 98-3(6)), and after giving careful consideration to all the evidence,
> the undersigned has concluded that the findings from the final
> decision of April 26, 2000, must be adopted.  The undersigned further
> notes the evidence of record through the date last insured, concurs
> with the residual functional capacity assigned in the previous
> decision, and therefore, it is hereby adopted.  In addition, there has
> been no change in the law, regulations, or rulings affecting such
> findings or the method for arriving at the findings.

(Tr. 19).

Social Security Acquiescence Ruling 94-4(6) and Social Security Acquiescence

Ruling 94-3(6) both provide that:

> When adjudicating a subsequent disability claim with an
> unadjudicated period arising under the same title of the Act as the
> prior claim, adjudicators must adopt such a finding from the final
> decision by an ALJ or the Appeals Council on the prior claim in
> determining whether the claimant is disabled with respect to the
> unadjudicated period unless there is new and material evidence
> relating to such a finding or there has been a change in the law,
> regulations or rulings affecting the finding or the method for arriving
> at the finding.[5]

Plaintiff objects to ALJ Walter's conclusion that he "must" adopt the RFC

determination articulated by the previous ALJ.  Plaintiff asserts that doing so would be incorrect

because "there is such significant differences in the evidence in the two administrative hearings."

It certainly appears that new and material evidence was submitted to ALJ Walters that was not

---

[5] Social Security Acquiescence Ruling 94-4(6), available at, http://www.ssa.gov/OP_Home/rulings/ar/06/AR98-04-ar-06.html (last visited July 30, 2009); Social Security Acquiescence Ruling 94-3(6), available at, http://www.ssa.gov/OP_Home/rulings/ar/06/AR98-03-ar-06.html (last visited July 30, 2009).

presented to the previous ALJ, thus calling into doubt whether ALJ Walters was *required* to adopt the previous ALJ's RFC determination. However, an examination of the two decisions in question reveals that ALJ Walters did not adopt the RFC assessment articulated by the previous ALJ.

The previous ALJ concluded that Plaintiff retained the ability to perform work activities, subject to the following limitations: (1) he can lift a maximum of ten pounds; (2) during an 8-hour workday, he can sit for six hours and walk/stand for two hours; (3) he cannot climb, crawl, squat, or kneel; and (4) he cannot repetitively bend, twist, and turn. (Tr. 38). While ALJ Walters imposed these particular limitations on Plaintiff, he further found that Plaintiff required a sit/stand option and could only perform unskilled work, two limitations not recognized by the previous ALJ. It is clear, therefore, that ALJ Walters did not adopt the RFC assessment articulated by the previous ALJ, despite the quoted language on which Plaintiff relies.

The Court's conclusion that ALJ Walters did not adopt the previous RFC determination is further supported by an examination of the substance of ALJ Walter's decision. In determining Plaintiff's RFC, ALJ Walters did not discuss the previous ALJ's decision, but instead examined at length all the medical evidence in the present record, which is dated after the previous decision, and arrived at his own RFC determination. As previously noted, ALJ Walters' RFC determination is supported by substantial evidence.

In sum, the Court recognizes that a conflict appears to exist between ALJ Walters' statement that he "must" adopt the RFC determination articulated by the previous ALJ and the fact that he declined to do so, instead imposing on Plaintiff even greater limitations. The Court, however, finds that such is harmless for the reasons stated immediately above. The Court, therefore, finds this issue to be without merit.

d.      Social Security Ruling 83-20

Plaintiff argues that the ALJ "failed to make clear if [Plaintiff] was currently disabled, and thus whether Policy 83-20 applied."  Plaintiff further asserts that "[i]t would appear that the ALJ believed [Plaintiff] was disabled, after the date last insured, but the ALJ did not make a finding about that."  Plaintiff asserts that this matter must be remanded so that an ALJ can determine whether Plaintiff is currently disabled and, if so, the onset date of Plaintiff's current disability.

The Court finds no ambiguity in the ALJ's decision.  The ALJ found that through the date Plaintiff was last insured, he retained the ability to perform work which exists in significant numbers, thus precluding an award of benefits.  The Court discerns nothing in the ALJ's decision which can reasonably be interpreted as suggesting that Plaintiff became disabled after the expiration of his insured status.  Moreover, the ALJ was not required to examine whether Plaintiff became disabled subsequent to the expiration of his insured status.  *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997) (recognizing that the ALJ was not required to determine whether the claimant became disabled after the expiration of his insured status because "[t]he only necessary inquiry is whether the claimant was disabled prior to the expiration of his insured status").

Social Security Ruling 83-20 provides that "[i]n addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability."  Social Security Ruling 83-20: Titles II and XVI: Onset of Disability, available at http://www.ssa.gov/OP_Home/rulings/di/01/SSR83-20-di-01.html (last visited on July 30, 2009).  However, as the Sixth Circuit has observed, this Ruling is applicable only where the ALJ finds that the claimant is disabled.  *See Callahan*, 109 F.3d at 274.

In sum, contrary to Plaintiff's argument, the ALJ was not required to determine whether Plaintiff became disabled after the expiration of his insured status. Moreover, because the ALJ made no finding that Plaintiff was disabled, Social Security Ruling 83-20 has no applicability in this matter. This claim, therefore, is without merit.

e.    The ALJ Properly Relied on the Vocational Expert's Testimony

Plaintiff asserts that the ALJ relied upon the response to an inaccurate hypothetical question. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's limitations, to which the vocational expert indicated that there existed approximately 12,500 such jobs. Because there was nothing improper or incomplete about the hypothetical questions he posed to the vocational expert, the ALJ properly relied upon her response thereto.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, the undersigned recommends that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: August 4, 2009

_/s/ Ellen S. Carmody_____
ELLEN S. CARMODY
United States Magistrate Judge